**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| **LOUISE HUNTER; GLORIA HUNTER CARR; JESSIE HUNTER, JR.; ARTHUR HUNTER; ANNIE GRIFFIN; PATRICIA GRIFFIN TAYLOR; JOYCE GRIFFIN BARTON; TOMMY GRIFFIN; IRENE DAVIS; TERRY DAVIS; MOSES DAVIS; MELVIN DAVIS; EDITH MACK; LORENE MACK; and ALEXANDER MACK, individually and as representatives of those similarly situated,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY; and INDEPENDENT LIFE AND ACCIDENT INSURANCE COMPANY,** <br><br> **Defendants.** | Master File No. C/A No. 3:01-5000-22 <br><br> MDL DOCKET NO. 1429 <br><br> ORDER AND OPINION GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS <br><br> This order relates to the third consolidated amended class action complaint here captioned and the following related civil actions**:** <br> C/A NO. 3:02-1483-22 <br> C/A NO. 3:01-4506-22 |

This order relates to the Third Consolidated Amended Class Action Complaint filed on January 5, 2005 (Pacer Doc. No. 123) (hereinafter "Complaint").[1] The Complaint was filed in accordance with the Order entered on December 2, 2004 (hereinafter "December 2nd Order") (Pacer Doc. No. 122).

---

[1] The Complaint was filed under the case number given to the multidistrict litigation proceedings. There are, however, two underlying cases at issue: *Jones v. American General Ins. Co.* (later denominated *Mack v. Independent Life*) (D.S.C.C.A. No. 3:01-4506-22) and *Hunter, et al v. American General Life and Accident Ins. Co.* (D.S.C.C.A. No. 3:02-1483-22). The *Jones/Mack* action was originally filed on May 25, 2000 in the Southern District of Florida. The *Hunter* action was originally filed on February 8, 2002 in the Middle District of Alabama. Both actions were transferred to this district as part of multidistrict litigation proceedings. While the present motion is being addressed under the MDL case number, the Clerk of Court is directed to also enter this order in the underlying separate actions.

**MOTION AT ISSUE**

The motion presently before the court is Defendants' motion to dismiss certain aspects of the Complaint (Pacer Doc. No. 125). For the reasons set forth below, the court has determined that Defendants' motion to dismiss should be granted in part and denied in part.

**BACKGROUND**

The Complaint alleges that Defendant American General Life and Accident Insurance Company ("American General") or companies that it has acquired (collectively "Defendants") engaged in racial discrimination in the issuance or maintenance of certain forms of insurance. The allegations central to the present motion relate to alleged discriminatory practices in the sale of what are commonly referred to as industrial life insurance policies.[2] Specifically, Plaintiffs allege that various companies acquired by Defendant American General discriminated against African-Americans by offering African-Americans less coverage per dollar of premium than offered similarly situated Caucasians.

The Complaint asserts three causes of action: (1) violation of 42 U.S.C. § 1981 (racial discrimination as to contracts); (2) violation of 42 U.S.C. § 1982 (racial discrimination as to personal property); and (3) a claim for injunctive relief, disgorgement, unjust enrichment and constructive trust.

**DISCUSSION**

**A.     Standing**

In its motion to dismiss and supporting briefs, Defendant argues that Plaintiffs, who claim

---

[2] Industrial life insurance, as that term is used in this order, refers to low face value life insurance policies for which premiums were collected on a weekly or monthly basis. During the time frames at issue, this type policy was generally sold and the premiums collected on a door-to-door basis.

an interest as an insured in a life insurance policy, have failed to satisfy their burden of establishing standing to pursue the causes of action in the Complaint. Applying the Fourth Circuit's standard for determining the threshold issue of standing as explained in *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 319-320 (4th Cir. 2002), the court finds that the following five Plaintiffs have failed to satisfy their burden of establishing standing: Lorene Mack, Alexander Mack, Gloria Hunter, Arthur Hunter, and Jessie Hunter. Those five Plaintiffs were minors when the policies were issued. They were the insureds under the policies. They did not pay policy premiums during the short duration of the policies at issue. The policies lapsed while these Plaintiffs were still minors. The policy language does not confer standing on these five Plaintiffs under these circumstances. They have not satisfied their burden of establishing the Article III standing requirements of injury, traceability, and redressability outlined by the Fourth Circuit in the *Friends of Ferrell Parkway* decision. Accordingly, these five Plaintiffs do not have standing to assert a claim for alleged premium overcharges for policies that terminated for non-payment of premiums. As a result, Defendant's motion to dismiss for lack of standing is granted as to Lorene Mack, Alexander Mack, Gloria Hunter, Arthur Hunter, and Jessie Hunter.

**B. Section 1982 Claim (Second Cause of Action)**

The Second Cause of Action alleges a claim under 42 U.S.C. § 1982. Plaintiffs allege that, "[i]nsurance contracts are personal property within the meaning of 42 U.S.C. § 1982". Complaint ¶ 59. In its motion to dismiss and supporting briefs, Defendant argues that Plaintiffs do not state a claim under Section 1982 because an insurance policy is not "personal property" within the scope of Section 1982.

Although the Fourth Circuit has not addressed the issue, the prevailing view is that Section

1982 does not apply to contract rights.[3] The court finds persuasive the analysis in *Yates v. Hagerstown Lodge No. 212*, 878 F.Supp. 788 (D. Md. 1995). In the *Yates* case, plaintiff argued that a contract for club membership, "constitutes personal property within the meaning of Section 1982". *Id.* at 799. The district court disagreed with plaintiff's analysis of the case authority, granted defendant's motion to dismiss, and explained as follows:

> Section 1982 generally is aimed at remedying discrimination relating to property, while Section 1981 provides against the refusal to contract on the basis of race. [Plaintiff] has failed to explain why, absent specific allegations that an interest in property has been denied, Section 1982 should be expanded to apply to matters clearly contractual.

*Id.* at 801.

The decision in the *Yates* case is consistent with general rules of statutory construction. Sections 1981 and 1982 originate from the same legislative enactment: Section 1 of the Civil Rights Act of 1866. *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 102 S. Ct. 3141, 3146 (1982). Section 1981 (a) specifically protects the right "to make and enforce contracts". 42 U.S.C.

---

[3] While there is some authority to the contrary, the majority view is that Section 1982 does not apply to contract rights. *Schirmer v. Eastman Kodak Co.,* 1987 WL 9280 at *4 (E.D. Pa. April 9, 1987) (plaintiff "has provided no support for her view that contract rights are 'property' for purposes of Section 1982. We are not persuaded that Section 1982 should be so interpreted -- particularly because such an interpretation would strain the language of Section 1982 only to duplicate the express protection of contract rights under Section 1981. Her Section 1982 claim shall be dismissed."), *aff'd*, 869 F.2d 591 (3rd Cir. 1989); *Rick Nolan's Auto Body Shop, Inc. v. Allstate Ins. Co.,* 711 F. Supp. 475, 477 (N.D. Ill. 1989) ("contractual rights are not protected under § 1982. . . . The plain language of § 1982 appears to buttress" this conclusion); *Dunlap v. Peco Energy Co.,* 1996 WL 617777 at *3 (E.D. Pa. Oct. 23, 1996) ("Plaintiffs' argument fails because § 1982 does not protect contract rights."); *Jurado v. Eleven-Fifty Corp.*, 630 F. Supp. 569, 572 (C.D. Cal. 1985) ("[Section 1982's] provisions plainly did not extend to [plaintiff's] claims, which sounded in employment discrimination, or possibly in breach of contract."), *aff'd* , 813 F.2d 1406 (9th Cir. 1987); *but see, Sims v. Order of United Commercial Travelers of America*, 343 F.Supp. 112, 113 (D. Mass. 1972) (denying defendants' motion to dismiss Section 1982 claims arising out of defendants' rejection of plaintiffs' applications for membership in a "fraternal accident society" and for insurance).

§ 1981(a). Section 1982 does not mention contracts, but does protect the right to "inherit, purchase, lease, sell, hold and convey real and personal property." 42 U.S.C. § 1982. Section 1981 clearly applies to contracts. Accepting Plaintiffs' position that Section 1982 also applies to contracts would render Section 1981 superfluous. Courts have "a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment." *Freytag v. Commissioner,* 501 U.S. 868, 877, 111 S. Ct. 2631, 2638 (1991) (citation omitted); *Maryland Psychiatric Soc., Inc. v. Wasserman*, 102 F.3d 717, 720 (4th Cir. 1996) (citing *Freytag* and explaining that "rules of statutory construction forbid us to construe one provision in a way that renders another provision of the same enactment superfluous"), *cert. denied*, 522 U.S. 810 (1997). As a matter of statutory construction, Congress is presumed to have intended a difference between Section 1981 and 1982 when it enacted them in 1866.

Based on this analysis, Defendant's motion to dismiss is granted as to Plaintiffs' Section 1982 claim in the Second Cause of Action.

### C. Fourth Cause of Action

The Fourth Cause of Action is denominated a claim for injunctive relief/disgorgement and unjust enrichment and imposition of a constructive trust.[4] Defendant's motion to dismiss and supporting briefs argue that this cause of action should be dismissed because the express contracts between the parties govern the relationship and preclude the quasi-contract unjust enrichment claim. Defendant also argues that the state law unjust enrichment claims are barred by the statute of limitations for all Plaintiffs and by the rule of repose for the Alabama Plaintiffs. Although the Fourth Cause of Action appears to be a separate cause of action, Plaintiffs' Brief states that,

---

[4] There is no Third Cause of Action.

"[p]laintiffs make no state law unjust enrichment claims [N]o state law unjust enrichment claim is made." Pacer Doc. No. 129, 00. 22 and 23 n.7. Based on Plaintiffs' clarification of its position, the Fourth Cause of Action is not to be considered as a separate cause of action but simply as a claim for relief under Plaintiffs' Section 1981 claim.

### D.    Section 1981 Claim (First Cause of Action)

#### 1.    Allegations of Essential Elements

Defendant argues that the Complaint fails to allege the essential elements of a Section 1981 claim. The court finds that the Complaint sufficiently alleges the essential elements of a Section 1981 claim. Defendant's motion to dismiss is denied as to the sufficiency of the allegations of the Section 1981 claim.

#### 2.    Post-Formation Conduct

Plaintiffs' Complaint seeks recovery for certain actions occurring after the formation of the insurance policies at issue. Plaintiffs' post-formation conduct claims include the collection of alleged discriminatory premium payments, the payment of alleged inadequate death benefits, actions to conceal the alleged discriminatory pricing scheme, and the failure to take corrective action with regard to in-force policies that Defendant allegedly knew were discriminatorily rated. Complaint ¶¶ 25-32. In its motion to dismiss and supporting briefs, Defendant argues that Plaintiffs are precluded from pursing a Section 1981 claim as to any such alleged post-formation conduct that occurred: (1) before the November 11, 1991 effective date of the Civil Rights Act of 1991 and (2) more than four years before the original *Louise Hunter* complaint was filed on February 8, 2002.

Prior to the Civil Rights Act of 1991 that became effective on November 21, 1991, Section 1981 provided in relevant part that "[a]ll persons . . . shall have the same right in every State and

Territory to make and enforce contracts . . . as is enjoyed by white citizens..." 42 U.S.C. § 1981(a). In *Patterson v. McLean Credit Union*, 491 U.S. 164, 171 (1989) ("*Patterson*"), the United States Supreme Court ruled that Section 1981 covered the initial formation of the contract only, and "does not apply to conduct which occurs after the formation of a contract." The *Patterson* Court further stated:

> The most obvious feature of the provision is the restriction of its scope to forbidding discrimination in the "mak[ing] and enforce[ment]" of contracts alone. Where an alleged act of discrimination does not involve the impairment of one of these specific rights, § 1981 provided no relief. Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts.

*Id*. at 176 (citations omitted). The Supreme Court reiterated that Section 1981 applied only to the formation of the contract, "but not to problems that may arise later ... [and] does not extend ... to conduct ... after the contract relation has been established ... Such post-formation conduct does not involve the right to make a contract" protected by Section 1981. *Id.* at 176-177.

Cases interpreting *Patterson* made the timing of the alleged discriminatory conduct the key element: if the discriminatory conduct occurred after the contract was formed, then it was not actionable under Section 1981. *Williams v. First Union National Bank*, 920 F.2d 232, 234 (4th Cir. 1990) ("[T]he plain language of the Supreme Court in *Patterson* rejects any claim based on actions which occur after the contract has been formed"), *cert. denied*, 500 U.S. 953 (1991).

Based on *Patterson*, there was no liability under Section 1981 for conduct occurring after contract formation. In response to *Patterson*, Congress passed the Civil Rights Act of 1991 that became effective on November 21, 1991. The Civil Rights Act of 1991 added subsection (b) to Section 1981:

**(b) "Make and enforce contracts" defined**

7

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(b). The United States Supreme Court acknowledged that the 1991 amendment may not be applied retroactively, and "does not apply to preenactment conduct". *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313, 114 S. Ct. 1510, 1519-20 (1994) ("*Rivers*"). In effect, the Civil Rights Act of 1991 amended Section 1981 to make it prospectively applicable to post-formation conduct.

In the order of December 2, 2004, this court analyzed the effect of the Civil Rights Act of 1991 and the *Rivers* decision:

> Section 1981 was amended by the Civil Rights Act of 1991 in a manner that expands the scope of actionable conduct. The amendments do not, however, reach conduct which occurred prior to the amendment. *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 (1994) (holding that 1991 amendment to Section 1981 "does not apply to preenactment conduct").

Order, p. 20 n.20. The effect of *Patterson* and *Rivers* is that there is no liability under Section 1981 for post-formation conduct occurring before November 21, 1991.[5]

---

[5] *See also James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421 (4th Cir. 2004) ("Claims alleging discrimination after the formation of the employment relationship (post-formation conduct claims), were not actionable under § 1981 after the *Patterson* decision    [A]fter the enactment of the [Civil Rights Act of 1991], claims based on conduct occurring after the formation of the contractual relationship (post-formation conduct) are actionable under § 1981."); *Gersman v. Group Health Ass'n, Inc.*, 975 F.2d 886, 899-900 (D.C. Cir. 1992) ("Under *Patterson*, § 1981 did not prohibit discrimination in termination of contracts. [The Civil Rights Act of 1991] extended § 1981 to that discriminatory conduct    [The Civil Rights Act of 1991] does not apply to conduct that occurred before its enactment    The rights of the parties must be adjudicated as they were under the law prevailing at the time of the conduct"), *cert. denied*, 511 U.S. 1068 (1994); c*f.*, *White v. BFI Waste Services, LLC*, 375 F.3d 288, 292 (4th Cir. 2004) ("Section 1981 claims based upon conduct occurring after the formation of an employment contract, including hostile work environment claims and claims of discrimination in compensation like the ones raised here, arise under the 1991 amendments" to Section 1981).

8

Plaintiffs concede that post-formation conduct prior to the November 21, 1991 effective date of the Civil Rights Act of 1991, such as the collection of alleged discriminatory premium payments, the payment of alleged inadequate death benefits, and concealment of the alleged discriminatory pricing scheme, is not subject to Section 1981 liability. May 19 Hearing Transcript (Pacer Doc. No. 135), pp. 33-34.

Based on *Patterson* and *Rivers*, Plaintiffs are barred from pursuing a Section 1981 claim as to any post-formation conduct relating to policies that terminated before the November 21, 1991 effective date of the Civil Rights Act of 1991. Similarly, Plaintiffs are barred from pursuing a Section 1981 claim as to any post-formation conduct that occurred before that November 21, 1991 effective date. Defendant's motion to dismiss is granted as to Plaintiffs' Section 1981 post-formation conduct claims (such as alleged discriminatory premium payments and alleged inadequate death benefits) that occurred before the November 21, 1991 effective date of the Civil Rights Act of 1991. This holding has no effect on Plaintiffs' § 1981 contract formation claims. Neither does it address what damages may be available under those claims.

The statute of limitations also bars any claim relating to post-formation conduct that occurred more than four years before suit was filed. This statute of limitations point is based on the inter-relationship of 28 U.S.C. § 1658 and three United States Supreme Court decisions: *Patterson; Rivers;* and *Edith Jones v. R.R. Donnelley & Sons Co.*, 124 S. Ct. 1836 (2004) ("*Edith Jones*"). In *Edith Jones*, the United States Supreme Court recently concluded that a claim "is governed by [28 U.S.C.] § 1658's 4-year statute of limitations - if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." 124 S. Ct. at 1845. In the order of December 2, the court explained the relationship between 28 U.S.C. § 1658 and the *Edith Jones* decision:

> This section [28 U.S.C. § 1658] establishes a four year statute of limitations which is applicable to "civil action(s) arising under an Act

9

> of Congress enacted after the date of enactment of this section" (December 1990). 28 U.S.C. § 1658(a). This section, therefore, applies to amended statutes only to the extent the relevant cause of action was made possible by a post-1990 enactment. *Edith Jones v. R.R. Donnelly & Sons*, 124 S. Ct. 1836 (2004).

Order of December 2, p. 20 n.20. Since Plaintiffs' Section 1981 post-formation conduct claims were first made possible by the Civil Rights Act of 1991 that became effective on November 21, 1991 (*i.e.*, a post-1990 enactment), Section 1658's four-year statute of limitations applies to Plaintiffs' Section 1981 post-formation conduct claims. *See James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421 (4th Cir. 2004) ("the four-year statute of limitations" under 28 U.S.C. § 1658 "applies to the [post-formation conduct] claims at issue here"). Section 1658 thus bars any such post-formation conduct claim, "commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a).

The Section 1981 claims asserted by Plaintiffs relating to post-formation conduct, such as collection of alleged premium overcharges or payment of alleged inadequate death benefits, were complete and accrued no later than the specific conduct at issue. Section 1658 has a limited discovery rule exception to the four-year statute of limitations; that limited discovery rule exception applies only as to certain claims under the Securities Exchange Act of 1934. 28 U.S.C. § 1658(b). A general discovery rule does not apply to Plaintiffs' Section 1981 post-formation conduct claims that became available as a result of a post-1990 enactment (*i.e.,* the Civil Rights Act of 1991 that became effective on November 21, 1991). *Edith Jones*; *see generally, TRW, Inc. v. Andrews*, 534 U.S. 19 (2001).

This ruling concerning the four year statute of limitations on Plaintiffs' Section 1981 post-formation conduct claims does not address the statute of limitations issue as to Plaintiffs' Section 1981 contract formation claims.

As applied to Plaintiffs in this case, Section 1658's four-year statute of limitations bars Plaintiffs from pursuing any Section 1981 post-formation conduct claims relating to conduct (such as alleged discriminatory premium payments and alleged inadequate death benefits) that occurred before a certain statute of limitations cut-off date. At the May 19 hearing on Defendant's motion to dismiss, there was a general discussion that February 8, 1998 was the statute of limitations cut-off date for Plaintiffs' Section 1981 post-formation conduct claims because February 8, 1998, was four years before the filing of the *Louise Hunter* original complaint on February 8, 2002. At the hearing, the court indicated that Defendant's motion to dismiss would be granted as to Plaintiffs' Section 1981 post-formation conduct claims that occurred prior to February 8, 1998.

Since the May 19 hearing, Plaintiffs' counsel have taken the position that the February 8, 1998 statute of limitations cut-off date for Plaintiffs' Section 1981 post-formation conduct claims should be moved to an earlier date because of tolling of the statute of limitations caused by the filing of the earlier class action against the Defendant in *McNeil v. American General, et al*, C.A. No. 3:99-1157 (M.D. Tenn.) ("*McNeil*"). Plaintiffs will have until June 24, 2005 to file a brief on the issue of whether the statute of limitations cut-off date for Plaintiffs' Section 1981 post-formation conduct claims should be moved to a date earlier than February 8, 1998 because of any tolling of the statute of limitations caused by the *McNeil* case. Defendant's brief on this issue will be due on July 15, 2005. Plaintiffs' reply brief will be due on July 29, 2005.

3.     Contract Formation Claims

Plaintiffs allege that the insurance policies at issue were purchased between 1951 and 1975. Complaint ¶ 22 and Exhibit B. Plaintiffs also allege that they did not know until shortly before the filing of the original class action complaint, and could not reasonably have known, that they paid higher premiums and received lower death benefits than Caucasians. Complaint ¶ 33. In effect, Plaintiffs rely on the "diligence-discovery rule of accrual" as to their Section 1981 contract

formation claims.

In the motion to dismiss and supporting brief, Defendant argues that Plaintiffs' Section 1981 contract formation claims accrued when each life insurance policy was purchased and the first premium was paid. Defendant also argues that the United States Supreme Court has never applied a "diligence-discovery rule of accrual" in a Section 1981 case. Defendant argues that the recent decision in *TRW, Inc. v. Andrews*, 534 U.S. 19, 26 (2001) ("*TRW*") establishes that the "diligence-discovery rule of accrual" should not be applied as to Plaintiffs' Section 1981 contract formation claims.

In the December 2 order, the court rejected Defendant's argument. Order of December 2, p. 21, n.22. This court is bound by prior Fourth Circuit authority applying the "diligence-discovery rule of accrual" to Section 1981 contract formation claims. Accordingly, the court denies Defendant's motion to dismiss as to Plaintiffs' Section 1981 contract formation claims.

### E. Pre-1982 Class 3

In the order of December 2, the court granted American General's motion to deny class certification and denied Plaintiffs' motion for class certification as to the pre-1982 class that was denominated as Class 2 in the consolidated amended class action complaint filed on June 7, 2004 (Pacer Doc. No. 93). That pre-1982 class has been re-alleged in the current Complaint as Class 3. Complaint ¶ 40, p.12. The Complaint acknowledges that certification of the pre-1982 class "has been denied by this Court", but alleges that the same class allegations, "remain[] in the Complaint out of an abundance of caution so as not to waive any class claims upon the successful outcome of an appeal." Complaint ¶ 40, p. 11. The Complaint alleges that Plaintiffs, "continue to pursue through the appellate process certification of the [pre-1982] class". Complaint ¶ 40, p. 11. In its motion to dismiss and supporting brief, Defendant argued that the pre-1982 Class 3 must be

dismissed because of the law of the case doctrine.

Since the time of the filing of Defendant's motion to dismiss, the Fourth Circuit has granted plaintiffs' Rule 23(f) petition for review of the court's order of December 2. Plaintiffs' Rule 23(f) appeal is now pending before the Fourth Circuit. The parties agree that the court's ruling on the motion to dismiss the pre-1982 Class 3, based on the law of the case doctrine, should await the outcome of Plaintiffs' Rule 23(f) appeal. Defendant's motion to dismiss the pre-1982 Class 3 based on the law of the case doctrine is consequently denied without prejudice to Defendant's right to refile the motion depending on the outcome of the appeal.

## CONCLUSION

For the reasons set forth above, the court grants in part and denies in part Defendant's motion to dismiss. The court grants Defendant's motion to dismiss for lack of standing as to Lorene Mack, Alexander Mack, Gloria Hunter, Arthur Hunter, and Jessie Hunter. The court grants Defendant's motion to dismiss as to Plaintiffs' Section 1982 claim in the Second Cause of Action. The court will not consider the Fourth Cause of Action ("Claim for injunctive relief/disgorgement and unjust enrichment and imposition of a constructive twist") as a separate cause of action, but simply as a claim for relief under Plaintiffs' Section 1981 claim. The court denies Defendant's motion to dismiss as to the sufficiency of the allegations of the essential elements of the Section 1981 claim in the First Cause of Action. The court grants Defendant's motion to dismiss as to Plaintiffs' Section 1981 post-formation conduct claims for conduct occurring before the November 11, 1991 effective date of the Civil Rights Act of 1991. The court orders that the parties submit briefs, according to the previously-established schedule, on the issue as to whether the statute of limitations cut-off date for Plaintiffs' Section 1981 post-formation conduct claims should be moved to a date earlier than February 8, 1998 because of any tolling of the statute of limitations caused by the

*McNeil* case. The court denies Defendant's motion to dismiss as to Plaintiffs' Section 1981 contract formation claim based on the statute of limitations. The court denies Defendant's motion to dismiss as to Plaintiffs' pre-1982 Class 3 based on the law of the case doctrine without prejudice to Defendant's right to refile the motion depending on the outcome of the appeal from the court's denial of class certification as to the pre-1982 class in the order of December 2.

**IT IS SO ORDERED.**

      s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
June 24, 2005

C:\temp\notesB0AA3C\~3155399.wpd